# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| HARVEY ANTHONY EPPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CV416-100 |
| JEFFREY S. HEIN, Jail | ) |
| Administrator and LISA BOYD, Asst. | ) |
| Jail Administrator, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Proceeding *pro se*, Harvey Epps brings this 42 U.S.C. § 1983 action against two Liberty County Jail employees who, he alleges, unconstitutionally denied him a special religious diet. Doc. 1 at 5-8. He also inveighs against the jail's lack of a grievance procedure, nutritionally deficient diet, the denial of appropriate medical care, and unsanitary conditions. *Id.* at 7-8. The Court preliminarily reviews his Complaint under 28 U.S.C. § 1915A(a).[1]

---

[1] The Prison Litigation Reform Act (PLRA) requires federal courts to conduct early screening of all suits filed by prisoners or detainees for the purpose of identifying claims that are subject to immediate dismissal because they are frivolous or malicious, fail to state a claim for relief, or seek monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915A (which applies to prisoner/detainee complaints against governmental entities or officials, whether

## I. BACKGROUND[2]

Epps professes to be a practicing Rastafarian.[3] After five months of "put[ting] in numerous request[s] for [a] religious diet," he at some point received the food requested. Doc. 1 at 5. On February 17, 2016,

---

plaintiff is proceeding IFP or has paid the filing fee); 28 U.S.C. § 1915(e)(2)(B) (imposing the same dismissal obligation as to any case filed IFP, whether by a prisoner/detainee or any other "person"); 42 U.S.C. § 1997e(c)(1) (imposing the same dismissal obligation as to "any action brought with respect to prison conditions"). On initial screening of a prisoner complaint, only "cognizable claims" may be allowed to proceed. 28 U.S.C. § 1915A(b). All three statutory provisions contemplate the dismissal of non-cognizable claims prior to service of process upon any defendant. § 1915A (requiring screening "before docketing if feasible or . . . as soon as practicable after docketing"); § 1915(e)(2) (requiring dismissal "at any time" the court determines the suit to be factually or legally insubstantial); § 1997e(c)(1) (requiring dismissal of insubstantial claims on the court's "own motion").

[2] As noted, screening pursuant to 28 U.S.C. § 1915A determines whether the plaintiff states a cognizable claim. The facts contained consequently are taken as true for purposes of this Order.

[3] Rastafarian religion resembles Christianity in some respects. *See Overton v. Department of Correctional Services*, 499 N.Y.S. 2d 860, 863-64 (N.Y. Sup. Ct. 1986). For both, a triune God exists and Jesus was his son. *See Wilson v. Schillinger*, 761 F.2d 921, 923 (3d Cir. 1985). Rastafarians, unlike Christians, believe that Jesus incarnated a second time (in the form of Haile Selassie, emperor of Ethiopia from 1930-1974) and many of their religious practices (*e.g.*, the spiritual use of marijuana) diverge from those of mainstream Christian denominations. Timothy B. Taylor, *Redemption Song: An Update on the Rastafarians and the Free Exercise Clause*, 9 Whittier L. Rev. 663, 664-65 (1988). Nevertheless, like many Jews, Rastafarians "follow a strict dietary regimen." *Id.* at 665. In fact,

> [t]he importance of these dietary restrictions to practicing Rastafarians is difficult to overemphasize. . . . They eat only foods that are 'I-tal,' a word analogous to 'kosher' meaning pure, natural or clean. . . . This excludes meats (especially pork), predatory fish, crustaceans, dairy products, white flour breads, alcohol, sweets and salt.

*Id.* at 680.

however, his "religious diet was canceled because of [kosher] items [he] ordered on store call." *Id.*

Epps asked a Lieutenant Donaldson about the cancellation, and he relayed that defendant Lisa Boyd "said no because when [Epps] first got locked up [he] didn't mention [he] had a religious preference and something about 'I can't change my religion.'" Doc. 1 at 5. He also says that defendant Jeffrey Hein penned a letter informing him that his "special diet based on [his] claimed religion is canceled effective 02/18/2016. After a review of your store call purchases it is apparent that you only requested a religious meal for personal nefarious reasons. Please stop with your bogus claims of religious preference as they will no longer be tolerated."

Epps claims to the contrary -- that "[t]here is documented proof," in the form of records from his time in Vermont prisons, "of [him] being Rastafarian." Doc. 1 at 5. Despite that, Hein and Boyd, says Epps, "had it out for [him]," and "didn't want to do it." *Id.* at 6-7. To that end, when he asked for a grievance form to complain about Hein and Boyd's actions, Lt. Jacobsen told him that "the issue has been solved" and thus was "not grievable." *Id.* at 4, 7. Epps never received a form.

In addition to his religious diet claim, Epps complains that defendants ignored his requests for dental care. Apparently half of a filling fell out, "but [he] could not see a doctor until [he] put in 2 more sick calls which will cost [him] $5 dollars each trip and whatever the price for the medication as well." Doc. 1 at 7. Rounding out his Complaint, Epps states that he is "not receiving the proper amount of food or proper nutrition on a daily basis," and that bathrooms and living areas are unsanitary.[4] *See id.* at 8.

## II. ANALYSIS

### A. Free Exercise Claim

Epps cites no constitutional or statutory provision as the basis for his religious discrimination claim. Nevertheless, he presents sufficient facts to suggest (if not state for purposes of Fed. R. Civ. P. 8(a)) a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"),[5] 42 U.S.C. § 2000cc–1.

---

[4] Inmates "use the same mop head every day without it being swap[ped] or change[d] for months." Doc. 1 at 8. Nor does the jail provide "proper tools or chemicals [(meaning plastic gloves and bleach)] to clean [the] shower." *Id.* Finally, the jail cells themselves contain "exposed rust throughout." *Id.*

[5] RLUIPA

4

## 1. Exhaustion

As a preliminary matter, dismissal for failure to exhaust administrative remedies is not proper at this stage. Under the PLRA exhaustion provision, a prisoner must exhaust all available administrative remedies before filing an action that challenges the conditions of his confinement. See 42 U.S.C. § 1997e(a) ("No action

---

is the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens, consistent with this Court's precedents. Ten years before RLUIPA's enactment, the Court held, in *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 878-882, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), that the First Amendment's Free Exercise Clause does not inhibit enforcement of otherwise valid laws of general application that incidentally burden religious conduct. . . . The Court recognized, however, that the political branches could shield religious exercise through legislative accommodation. . . . Responding to *Smith*, Congress enacted the Religious Freedom Restoration Act of 1993 (RFRA), 107 Stat. 1488, 42 U.S.C. § 2000bb et seq. . . . In *City of Boerne* [*v. Flores*, however,] this Court invalidated RFRA as applied to States and their subdivisions, holding that the Act exceeded Congress' remedial powers under the Fourteenth Amendment. . . . Congress again responded, this time by enacting RLUIPA.

*Cutter v. Wilkinson*, 544 U.S. 709, 714-15 (2005).

More expansive than prisoners' rights under the First Amendment, RLUIPA 'affords to prison inmates a heightened protection from government-imposed burdens, by requiring that the government demonstrate that the substantial burden on the prisoner's religious exercise is justified by a compelling, rather than merely a legitimate, governmental interest. *Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007) (internal quotation marks omitted), *abrogated on other grounds by Sossamon v. Texas*, — U.S. ——, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011). Thus, if [Epps'] RLUIPA rights were not violated, neither were his First Amendment rights.

*Gardner v. Riska*, 444 F. App'x 353, 354 (11th Cir. 2011).

shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail ... until such administrative remedies as are available are exhausted."). Exhaustion is a "precondition to suit" that must be enforced even if the available administrative remedies are either "futile or inadequate." *Harris v. Garner*, 190 F.3d 1279, 1285–86 (11th Cir. 1999); *see also Jones v. Bock*, 549 U.S. 199, 199–200 (2007) ("There is no question that exhaustion is mandatory under the PLRA.").

Not only does the PLRA require exhaustion, it "requires proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which means an inmate must "us[e] all steps" in the administrative process, and comply with any administrative "deadlines and other critical procedural rules," before filing a complaint about prison conditions in federal court. *Id.* at 89–91 (citation omitted). Thus, if an inmate has filed an "untimely or otherwise procedurally defective administrative grievance or appeal," he has not properly exhausted his administrative remedies. *Id.* at 83–84; *see also Lambert v. United States*, 198 Fed. Appx. 835, 840 (11th Cir. 2006) (proper exhaustion requires filing grievance "under the terms of and according to the time set by" prison

officials). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005). In Georgia, "proper exhaustion" means that prisoners are required to complete a three step grievance process, consisting of an informal grievance, a formal grievance, and an appeal, before filing suit in federal court. *Helton v. Burks*, 2012 WL 6097036 at * 2 (M.D. Ga. May 4, 2012) (citing Ga. Dep't of Corr. SOP IIB05–001 § VI).

Epps' allegations are, at least on preliminary review, sufficient to satisfy the exhaustion requirement. He says that he asked for a grievance form to complain about the lack of a religious diet and denial of medical care, but prison officials told him the "issue is not grievable and they was not going to give me a grievance because the issue has been solved." Doc. 1 at 4. He also insists that "nothing is ever documented with paper work," and that the jail lacks a grievance procedure in any case. *Id.* at 6. In the face of those allegations, dismissal for failure to exhaust would be improper. *See Cole v. Secretary, Department of Corrections*, 451 F. App'x 827, 828 (11th Cir.

2011) ("The exhaustion requirement is an affirmative defense, and a prisoner is not required to plead or demonstrate exhaustion in his complaint.") (citing *Jones*, 549 U.S. at 216). If, however, defendants move to dismiss and put forward proof showing that Epps failed to exhaust and defendants did not inhibit his efforts to do so, the PLRA obligates the Court to dismiss his claims. *See Turner v. Burnside*, 542 F.3d 1077, 1082 (11th Cir. 2008); *Harris*, 190 F.3d at 1285–86.

### 2. RLUIPA

Under RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise" of prisoners "unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). To succeed on a claim under RLUIPA, a plaintiff must first establish a prima facie case. To establish a *prima facie* case under RLUIPA, a plaintiff must demonstrate (1) that he engaged in a religious exercise; and (2) that the religious exercise was substantially burdened. *Smith v. Allen*, 502 F.3d 1255, 1276 (11th Cir. 2007).

\* \* \*

The Supreme Court has cautioned that it is "not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretation of those creeds." *Hernandez v. C.I.R.*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). Thus, RLUIPA defines "religious exercise" broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). "Although RLUIPA

> bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion . . . the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n. 13, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). Therefore, to be protected, a plaintiff must show that the practice he wishes to engage in is both sincerely held and rooted in religious belief.

*Benning v. Georgia*, 864 F. Supp. 2d 1358, 1363 (M.D. Ga. 2012).

Epps alleges that he wishes to engage in a religious exercise -- maintaining a kosher, Rastafarian diet. Doc. 1 at 5; *see Daley v. Lippin*, 555 F. App'x 161, 165 (3d Cir. 2014) (Rastafarian diet constituted religious exercise for purposes of religious freedom claims). He also contends that defendants have unreasonably prevented him from doing so. Doc. 1 at 5. Even so (and excluding examination of material "not within the judicial ken," *Hernandez*, 490 U.S. at 699), Epps fails to include facts bearing on the "sincerity of [his] professed religiosity." *Cutter*, 544 U.S. at 725 n. 13.

Nevertheless, "when a more carefully drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v.*

9

*Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n. 1 (11th Cir. 2002) (en banc)); *see also* Fed. R. Civ. P. 15(a)(2) (courts should grant leave to amend "freely . . . when justice so requires")." *Seckinger v. Bank of Am., N.A.*, No. CV415-306, 2016 WL 1381814, at *2 (S.D. Ga. Apr. 6, 2016). That's the case here. Epps' RLUIPA claim would survive preliminary review (if not a motion for summary judgment) if he included sincerity facts. The Court in its discretion therefore will give him a chance to amend his Complaint accordingly. He must do so within 30 days of the date this Order is served.

**B. Deprivation of Dental Care and a Nutritious Diet**

Epps' medical care allegations sound the 42 U.S.C. § 1983 bell (his form Complaint's header identifies it a pleading under that provision, too). "'To establish a claim under [that provision], a plaintiff must prove: (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law.'" *McDaniels v. Lee*, 405 F. App'x 456, 458 (11th Cir. 2010) (quoting *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)). Jail officials violate a pre-trial detainee's Fourteenth Amendment due process rights

when they act with deliberate indifference to his serious medical needs.

*Andujar v. Rodriguez*, 486 F.3d 1199, 1203 (11th Cir. 2007).[6]

> To prevail on a claim of deliberate indifference, a plaintiff must show: (1) a serious medical need;[7] (2) defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).[8] In order to establish deliberate indifference on the part of a defendant, a plaintiff must show: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.' *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010) (internal quotation marks and alteration omitted). With respect to the 'subjective knowledge' component, we have stated that defendants 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference.' *Bozeman [v. Orum]*, 422 F.3d [1265,] 1272 [(11th Cir. 2005)] (internal quotation marks and alteration omitted).

---

[6] It's unclear from the Complaint whether Epps is a pre-trial detainee in Liberty County, or stands convicted. Nevertheless, because "the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner," the Court analyzes his claims under the decisional law of both amendments. *Andujar*, 486 F.3d at 1203 n. 3.

[7] A "serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotes and cite omitted). "Only 'those deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.' *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Mere 'malpractice' allegations do not suffice. *Gonzalez v. Sarreck*, 2011 WL 5051341 at * 18 (S.D.N.Y. Oct. 24, 2011)." *Jackson v. Franks*, 2012 WL 6626020 at * 1 (S.D. Ga. Dec. 19, 2012).

[8] An Eighth Amendment medical care claim contains the same three elements. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (establishing and explaining the constitutional cause of action for Eighth Amendment medical deprivation claims).

*McDaniels*, 405 F. App'x at 458 (footnotes added).

Epps fails to state a medical care claim. Although a dental issue may (in some situations) constitute a "serious medical need," one partially cracked filling is not. Too, he alleges nothing remotely suggesting deliberate indifference. Even if he did, he also admits that the jail did not actually deprive him of care. Instead, it refused to replace his filling until he "put in 2 more sick calls." Doc. 1 at 7. Epps apparently balked at that requirement because of its cost ($5 for each visit, and he does not claim that he lacked those funds), but he ultimately chose not to make the calls to get the care he says he needed; no one prevented him from doing so. Because no second chance could cure that defect, his dental claim fails.

His lack of nutrition claim -- in its entirety: "I am not receiving the proper amount of food or proper nutrition (doc. 1 at 8) -- falls short, too. But unlike the dental care claim, if amended to include additional facts -- including those demonstrating deliberate indifference by prison officials -- it could survive. Epps thus has 30 days from the date this Order is served to amend his nutrition claim.

## C. Unsanitary Jail Conditions

The Eleventh Circuit:

and the old Fifth Circuit, have long recognized a "well established" Eighth Amendment right "not to be confined . . . in conditions lacking basic sanitation." *Chandler v. Baird*, 926 F.2d 1057, 1065–66 (11th Cir. 1991). In *Chandler v. Baird*, the plaintiff alleged that he had been deprived of toilet paper for three days, running water for two days, and was not provided with soap, a toothbrush, toothpaste, or bed linens. These conditions, combined with the inadequate heating of his cell, were sufficient to state an Eighth Amendment violation. *Id.* at 1063. We explained that "conditions that 'deprive inmates of the minimal civilized measure of life's necessities' are violative of the 'contemporary standard of decency'" that the Eighth Amendment demands. *Id.* at 1064 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

\* \* \*

Indeed, every sister circuit (except the Federal Circuit) has recognized that the deprivation of basic sanitary conditions can constitute an Eighth Amendment violation. *See Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (per curiam) ("[A]llegations of unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief."); *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment."); *Young v. Quinlan*, 960 F.2d 351, 365 (3d Cir. 1992) ("It would be an abomination of the Constitution to force a prisoner to live in his own excrement for four days. . . ."), superseded by statute on other grounds as recognized by *Nyhuis v. Reno*, 204 F.3d 65, 71 n. 7 (3d Cir. 2000); *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (noting that "inmates are entitled to reasonably adequate sanitation" and finding Eighth Amendment violation where cell was "covered with . . . human waste"); *Inmates of Occoquan v.*

*Barry*, 844 F.2d 828, 836 (D.C.Cir. 1988) (recognizing "sanitation" as a "basic need" for prisoners protected by the Eighth Amendment); *Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986) ("[T]he Eighth Amendment protects prisoners from being . . . denied the basic elements of hygiene.") (quotation omitted); *Green v. McKaskle*, 788 F.2d 1116, 1126 (5th Cir. 1986) ("[A] state must furnish its prisoners with reasonably adequate . . . sanitation . . . to satisfy [the Eighth Amendment's] requirements.") (quotation and alteration omitted); *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985) (noting that the failure to provide "minimally sanitary" conditions "amounts to a violation of the Eighth Amendment"); *Hawkins v. Hall*, 644 F.2d 914, 918 (1st Cir. 1981) (explaining that prison conditions "must be sanitary") (quotation omitted); *Hite v. Leeke*, 564 F.2d 670, 672 (4th Cir. 1977) (recognizing that "the denial of decent and basically sanitary living conditions and the deprivation of basic elements of hygiene" can violate the Eighth Amendment) (quotation omitted); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted.").

*Brooks v. Warden*, 800 F.3d 1295, 1303-04 (11th Cir. 2015). As with all Eighth Amendment claims, defendants who complain about a lack of basic hygiene must plausibly allege deliberate indifference by prison officials. *See id.* at 1303.

As he did with his medical care deprivation claim, Epps fails to allege any facts showing deliberate indifference. Even if he did, his prison conditions claim still fails because those conditions (exposed rust, a lack of plastic gloves and bleach, and a mildewed mop head) simply do not constitute "deprivation of basic elements of hygiene," *Brooks*, 800

F.3d at 1304, as does, for example, depriving a prisoner of "toilet paper for three days, running water for two days, and" failing to provide "soap, a toothbrush, toothpaste, or bed linens." *Chandler*, 926 F.2d at 1065. No new facts could cure that deficiency, so a chance to amend is unnecessary.

### III. CONCLUSION

Epps' RLUIPA and nutrition claims would survive preliminary review if he included additional facts. He thus has leave to amend his Complaint, within 30 days of the date this Order is served, to include allegations relating to the sincerity of his Rastafarian beliefs, and to demonstrate deliberate indifference to his nutritional needs. Regardless of whether he amends, Epps' dental deprivation and sanitary conditions claims should be **DENIED** for the reasons given above.

Meanwhile, it is time for Epps to pay his filing fee. His PLRA paperwork reflects $32.83 in average monthly deposits and a $1 average monthly balance over the six month period prior to the date of his Prison Account Statement. Doc. 9. He therefore owes a $6.57 initial partial filing fee. *See* 28 U.S.C. § 1915(b) (1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's

custodian (or designee) shall remit the $6.57 and shall set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full.

Also, the Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from the plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.

**SO ORDERED**, this <u>6th</u> day of June, 2016.

_/s/ G. R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA